OTTO CLEVEN, Plaintiff, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Defendant.

Supreme Court, New York County, May 3, 1932.

*Blau, Perlman & Polakoff* [*J. B. Goldberg* of counsel], for the plaintiff.

*James L. Quackenbush* [*A. L. Wilbur* of counsel], for the defendant.

COLLINS, J. The defendant moves to set aside the verdict on the ground of newly-discovered evidence. The action is for false arrest and malicious prosecution, plaintiff charging that he was unlawfully arrested and maliciously prosecuted for having inserted a tinfoil slug instead of a nickel in defendant's turnstile coin device at its Grand Central subway station.

Though held by the magistrate, the plaintiff was discharged by the Court of Special Sessions.

Originally the complaint alleged that at the time of the arrest the plaintiff was unemployed, and that his arrest and imprisonment prevented his obtaining employment at fifty dollars a week. This was the plaintiff's employment status which the defendant was called upon to meet at the trial. On the trial, however, the plaintiff, with defendant's consent, amended the complaint by alleging that he actually had a job at the time of his arrest at a salary of fifty dollars a week, which employment was lost to him as a consequence of the arrest.

On direct examination the plaintiff corroborated the allegation of employment by asserting that at the time of his arrest he was employed by Mr. Van Sickle, a French-Canadian, as mechanic and navigator, on Van Sickle's boat, receiving fifty dollars a week and three dollars a day subsistence money; that he was unable to return to this work after his discharge by the Court of Special Sessions because he was " too late," Van Sickle had " left." Plaintiff intimated that he had worked for Van Sickle for about two years. On cross-examination he testified that he was employed by Van Sickle in Florida; that the boat's name was *Dot, the Second*, which was kept in Canada most of the time, intimating that at one time it was operated continuously for over a year, " except when he laid it up." Further, that at the time of the arrest the boat was anchored at Rye, N. Y., having just arrived from Florida with plaintiff aboard. Also, that Van Sickle was dead and that Van Sickle's wife was living in France.

The defendant, on its motion for a new trial, produces proof to the effect that since the trial it has made diligent efforts to locate *Dot, the Second*, and its owner, Van Sickle. Van Sickle's affidavit is presented, wherein it appears that the plaintiff, instead of working for him (Van Sickle) at the time of the arrest, was employed for about two weeks, *about a year subsequent to the arrest*, not on *Dot, the Second*, but on *Awandra II;* that the plaintiff, instead of being engaged in Florida, was retained in New York, solely to make the cruise to Van Sickle's home, which was Detroit and not Canada, Van Sickle being a native of Detroit. The plaintiff did not make the trip from Florida, the *Awandra II* having been shipped on a Munson steamer, which also carried Van Sickle as a passenger. The plaintiff, says Van Sickle, was not employed as a pilot or navigator, but " to handle the lines while going through the canal locks and keep the boat clean." Van Sickle acted as his own pilot and navigator. When the boat arrived at Detroit the plaintiff's connection with Van Sickle terminated. It appears that both Van Sickle and his wife live together in Detroit.

In opposing the present motion the plaintiff does not refute or

even attempt to answer the grave charge of false swearing. The record now reveals that he did not work for Van Sickle at the time of his arrest, nor did he receive the compensation to which he testified. Accordingly, he did not and could not have been damaged in the manner and to the extent claimed. No affidavit from the plaintiff himself is presented. Countering the accusation of deception he submits the affidavit of his attorney, wherein two technical objections to the granting of the motion are advanced. *First*, that " newly-discovered evidence which is offered merely to discredit a witness of the opposite party cannot be made the basis of a new trial." (*Collins* v. *Central Trust Co. of Rochester*, 226 App. Div. 486.)

The newly-discovered evidence here, however, goes beyond the mere impeachment of " a witness of the opposite party." It bears directly and materially on a substantial feature of the plaintiff's case. The plaintiff " gave evidence of intrinsic probative value which is the only evidence offered by " him on the question of damages. (*Bloch* v. *Szczukowski*, 229 App. Div. 394.) If the newly-discovered evidence be true, then the plaintiff's case, particularly as to damages, was presented to the jury on misleading, if not false, testimony. Moreover, it is reasonable to assume that the plaintiff's testimony, concerning his employment, gave the jury a picture of his status which the jury considered in determining the truthfulness of the plaintiff's denial of the charge that he inserted a slug, instead of a coin. It is highly probable that the true facts regarding the plaintiff's employment would have affected the verdict. (*White* v. *Sebring*, 228 App. Div. 413.)

The plaintiff's *second* objection, that defendant made the plaintiff its own witness concerning the matters which it now challenges and that the present motion is, in effect, an attempt to impeach its own witness, is not persuasive. On the trial the plaintiff was not permitted to prove what the court considered speculative damages, but the plaintiff was allowed to show all damages which reasonably flowed from the arrest.

Even if the defendant made the plaintiff its own witness, the plaintiff was not thereby at liberty to falsify. Such circumstances would not confer immunity upon him. False swearing is false swearing, regardless for whom it is committed, and a result achieved thereby is obnoxious to justice. Aside from the two propositions asserted by the plaintiff, the court possesses inherent power to protect itself against imposition. (*Matter of City of New York*, 209 N. Y. 127, 132; *Schuyler* v. *Nottingham*, 226 App. Div. 591.)

The jury were entitled to the truth. A verdict procured by false

swearing is not a true or just verdict. Deception is not to be encouraged by permitting its perpetrator to garner the fruits of his act. The courts are not impotent to deal with false swearing. While jury verdicts are not to be treated lightly, the court should not hesitate to void a conclusion deceptively, if not dishonestly, obtained.

Convinced that the newly-discovered evidence is important, material and would tend to change the result, and that the defendant, with due diligence, could not have obtained same before the trial (*Black Star Line, Inc.,* v. *Baltica Insurance Co., Ltd.,* 220 App. Div. 440), I am constrained to grant the motion. Motion granted, verdict set aside, new trial ordered. Submit order.