LOUIS NEREMBERG, Plaintiff, *v.* 600 EAST 178TH STREET REALTY CORPORATION and Others, Defendants.*

City Court of New York, Bronx County, December 3, 1936.

*Hyman Chipkin*, attorney and of counsel for the plaintiff.

*Seymour J. Wilner* of counsel [*Maurice S. Feingold*, attorney], for the defendants.

SCHACKNO, J. Defendants move to set aside the verdict and the judgment entered thereon on the ground of newly-discovered evidence. The motion is made on a case that has been settled and signed and ordered filed. The action is for false arrest and malicious prosecution. The arrest took place on *March 27, 1933*. The com-

* Affd., App. Term, First Dept., N. Y. L. J. April 23, 1937, p. 2028.

plaint alleges that at the time of such arrest and prosecution the plaintiff was regularly employed as " managing clerk " in a store at a salary of forty dollars a week, that by reason thereof he lost such employment and was unable to obtain other employment for a period of five weeks thereafter, and then only at the reduced salary of twenty-five dollars a week. At the trial, which took place on June 18 and 19, 1936, plaintiff testified that he was a salesman in a fish market and not a " managing clerk " as is alleged in the complaint. After joinder of issue and on July 6, 1934, defendants moved for an order directing the plaintiff to serve a bill of particulars setting forth the name and address of his employer, the nature of his employment and the salary he was receiving at the time of such arrest and prosecution. Such particulars were denied to them by an order of this court dated and filed on September 13, 1934.

Plaintiff testified at the trial as follows: " Q. Where were you working at the time this arrest took place? A. 112 East Mt. Eden Avenue. Q. What was the name of your employer? A. Community Fish Market. Q. How much were you getting a week at that time? * * * A. The Witness: $40 a week. Q. What happened when you got to your place of employment? * * * The Witness: The boss discharged me. Q. What were your duties on the job you had in Mt. Eden Avenue? A. I was a salesman. By the Court: Fish salesman? A. Fish."

Defendants contend that since the trial they have discovered that this testimony of the plaintiff was untrue. His was the only evidence offered as to these matters.

Plaintiff was examined in supplementary proceedings in *December, 1932,* and again in October, 1936. On his first examination he testified that since *September, 1932,* and up to the date of such examination he had been employed by one *Goodz* at *No. 107 East Burnside avenue,* cleaning fish that the latter sold, receiving no salary, but relying upon tips received by him from Goodz' customers; that he did no selling. It is to be noted that, according to his own testimony, at the time of such examination, he had been in the employ of Goodz but for a short period of three months. The date that he entered upon such employment must have been then fresh in his mind, and it is fair to assume that he correctly stated it.

In his second examination, held about four years after his first examination, plaintiff testified: " Q. What is your business? A. Cleaner of fish. Q. Are you in business for yourself or are you employed? A. I am employed by Izzy Gutz [Goodz] at a fish store in a market at No. 20 East Burnside Ave., Bronx. Q. How much money do you earn? A. $9 a week for 2 days work. I work only

Mondays and Thursdays. I am also at the place of business on Tuesdays, Wednesdays and Fridays, but I don't get paid. I receive only tips. Q. How long have you been employed by Izzy Gutz [Goodz]? A. About 4½ or 5 years. About 2 years at 20 East Burnside Ave. For ½ year before that I was not employed at all. Prior to that time I was employed for about 2 or 2½ years by Izzy Gutz [Goodz] at 107 East Burnside Ave. Bronx, N. Y. There I received no salary, my only compensation being tips from customers."

Goodz, who was examined as a third party in said proceeding on October 5, 1936, corroborated plaintiff; he testified: " Q. Are you the owner of a fish market at No. 20 East Burnside Ave., Bronx, N. Y.? A. Yes. Q. Do you employ Louis Neremberg? A. Yes. Q. How long has he been employed by you? A. About five years. For about 2 years he has been employed by me at the fish market at No. 20 East Burnside Ave., about 5 months or six months *prior to that time* he was not employed by me. For about 2½ years or 3 years *prior to that time he was employed by me* at a fish market at *No. 107 East Burnside Ave.* Q. How much money does the judgment debtor earn in your employ? A. I pay him $9 a week and he earns tips from customers in addition. Q. How much money did the judgment debtor earn while in your employ at No. 107 East Burnside Ave.? A. I did not pay him any salary at all. His earnings consisted only of tips which he received from customers."

Finally, there is presented the affidavit of the attorney who examined the plaintiff and Goodz in such proceedings. It appears therefrom that in February, 1933, such attorney communicated with the plaintiff at the fish market at No. 107 East Burnside avenue and on or about April 3, 1933, visited him there and personally spoke to him, at which time and place plaintiff was busily engaged with his trade.

Plaintiff's own testimony, corroborated by Goodz, clearly shows that he was employed by the latter at No. 107 East Burnside avenue from September, 1932, and continuously thereafter for about a period of two or two and one-half years, receiving no salary, but tips from customers. The arrest and prosecution took place in March, 1933. It is evident that at such time he was employed by Goodz at the above address and that he continued such employment for a considerable time thereafter. It is significant that in his examination he makes no mention of having been employed by the Community Fish Market as a salesman or that he was employed by it at the Mt. Eden avenue address. Plaintiff is not, as his attorney would have the court believe, an illiterate person; he testified at the trial; though he may not be familiar with the English language he impressed me as being intelligent; he

understood the questions and knew how to answer them. There is no doubt in my mind that he understood the questions asked of him during his examinations in supplementary proceedings; even if he did not it is not denied that when he was examined the second time in such proceedings, he refused to subscribe or swear to his deposition until his son, a law student, explained and read it to him; moreover, his depositions and that of Goodz are substantially identical. When plaintiff sought to recover damages for false arrest and malicious prosecution he was a salesman earning forty dollars per week, but when his creditor attempted to reach property to satisfy his judgment, then he was a fish cleaner, receiving no salary, but living on tips or meagre earnings, but never enough to pay his debt or any part thereof.

The testimony of the plaintiff that at the time of his arrest and prosecution he was employed as a salesman by the Community Fish Market at No. 112 East Mt. Eden avenue for forty dollars per week and that by reason of such arrest and prosecution he lost such position and remained without work for five weeks until he obtained a new position for twenty-five dollars per week is a fabrication. These items of damages would not have figured at the trial had plaintiff not injected them and insisted upon them as an element of his damages.

The court cannot speculate at this time as to what portion of the jury's verdict consisted of these special damages. Furthermore, falsity of plaintiff's testimony in these particulars weakens the force of his entire testimony and detracts from his credibility. The newly-discovered evidence shows a different state of facts from that testified to by him and for which he claimed special damages. His case was presented to the jury on false testimony. It must have affected the verdict. The newly-discovered evidence is of a character that is likely to produce a different result upon a new trial, and it might well be that the jury may come to an entirely different conclusion, and this is especially true with respect to damages. The verdict obtained by plaintiff was not honestly obtained; to uphold it would place a premium upon perjury; it should not be permitted to stand.

As was said by COLLINS, J., in *Cleven* v. *Interborough Rapid Transit Co.* (143 Misc. 594, 595): " The newly-discovered evidence here, however, goes beyond the mere impeachment of ' a witness of the opposite party.' It bears directly and materially on a substantial feature of the plaintiff's case. The plaintiff ' gave evidence of intrinsic probative value which is the only evidence offered by him ' on the question of damages. (*Block* v. *Szezukowski*, 229 App. Div. 394.) If the newly-discovered evidence be true, then the

plaintiff's case, particularly as to damages, was presented to the jury on misleading, if not false, testimony. Moreover, it is reasonable to assume that the plaintiff's testimony, concerning his employ· ment, gave the jury a picture of his status which the jury considered in determining the truthfulness of the plaintiff's denial of the charge that he inserted a slug, instead of a coin. It is highly probable that the true facts regarding the plaintiff's employment would have affected the verdict. (*White* v. *Sebring*, 228 App. Div. 413.)"

The ends of justice will be promoted by granting the motion, and it is so ordered.